FRUGÉ, Judge.
Plaintiff, Maudry Dubois Falgout, is appealing from a judgment denying her demand for a divorce founded on her husband’s alleged adultery on two particular occasions. The defendant, Joseph Rennes Falgout, in his answer denied any adulterous relationship between himself and the named corespondent at the specified times or at any other time. The trial court denied plaintiff’s demand, and she appealed to this court. We affirm.
The issues presented by this appeal are: (1) Whether the trial court applied the wrong burden of proof? and (2) Whether the wife produced sufficient evidence to prove that her husband committed adultery ?
Considering the first issue, counsel for plaintiff contends that the trial court erred as to the burden of proof to be applied in adultery cases in which the only evidence is circumstantial. In support of this contention he notes that the “harsh burden of proof arises from language in Hayes v. Hayes, 225 La. 374, 73 So.2d 179 *71 (1954)”, wherein the court said the following at page 180:
“. . . the circumstantial proof in these cases must be so convincing as to exclude any other reasonable hypothesis but that of guilt.”
Plaintiff asserts that this burden is too severe and urges this court to adopt the preponderance of evidence test as enunciated in Gauthier v. Matthews, 191 La. 326, 185 So. 272, 273 (1938):
“In actions for divorce, courts must take such evidence as the nature of the case permits, circumstantial, direct, or positive, and bring to bear upon it the experiences and observations of life, and thus weighing it with prudence and care give effect to its just preponderance.” (Emphasis ours.)
Plaintiff concludes his brief by saying, “the standard for adultery is based on the preponderance of the evidence and not one almost equal to that of a criminal proceeding”.
One thing is certain in regard to the burden of proof required in adultery cases when the proof is founded upon circumstantial evidence: the burden has become greater than the test expounded in 1938 by the Gauthier case. See Bertrand v. Bertrand, 260 So.2d 128 (La.App. 3rd Cir., 1972); Fister v. Fister, 131 So.2d 103 (La.App. 3rd Cir., 1961); Savin v. Savin, 218 La. 754, 51 So.2d 41 (1951), and cases cited therein.
This conclusion is made evident by our language in the Fister case, 131 So.2d at page 105:
“In earlier days, the law, reflecting social customs of the time, did not countenance what today has become acceptable. Note the contrast between the above-quoted test of proof of adultery and that in the ancient Code of Manu, VIII, C. 100:
‘It shall be considered adultery to offer presents to a married woman, to romp with her, to touch her dress or ornaments, or to sit with her on a bed.’
“As the trial court so aptly stated, in the light of the changing mores and attitudes toward social behavior, it is today no longer presumed, at least in a legal sense, that where there is an opportunity to commit adultery it will be committed or that when a man and woman are alone together their only purpose in such a clandestine rendezvous will be for the gentle art of lovemaking. A suspicion of guilt cannot alone serve as a sufficient basis for the courts to stigmatize the defendant as guilty of the alleged act.”
The trial court judge was of the opinion that the circumstantial evidence in the case was not sufficient to prove an act of adultery; at page 147 of the record he said the following:
“It is obvious and clear to this court that the plaintiff has failed to sustain the burden of proof — the court might say the heavy burden which our law imposes in suits for divorce grounded on adultery.”
In LaTour v. Fuselier, 228 So.2d 336 (La.App. 3rd Cir., 1969), we said the following :
“In view of the strong burden of proof required to prove adultery and the nature and timing of the testimony presented, we cannot say that the trial court was manifestly erroneous in denying defendant, plaintiff in reconvention, a divorce on the grounds of adultery.” (Emphasis ours) (p. 338).
The trial court judge reviewed the jurisprudence of this state in order to make it clear what burden he was imposing. After stating that adultery is a serious matter entailing grievous consequences, he said, “the degree of proof necessary is almost equal to that in a criminal proceeding.”
In the case of Dowling v. Orleans Parish Democratic Committee, 235 La. 62, 102 *72 So.2d 755 (1958), the Louisiana Supreme Court was presented with a case of alleged election fraud based upon circumstantial evidence. Concurring in part, Justice McCaleb said the following with respect to the burden of proof in cases involving circumstantial evidence:
“Accordingly, in practical application, the rule in civil cases as to circumstantial evidence, when the inference drawn for the ultimate fact is founded only on another inference, is no different from that obtaining in criminal cases, which is, as stated in Article 438 of our Code of Criminal Procedure (R.S. 15:438), that ‘ . . . assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence’.” (p. 768).
In his reasons for judgment the trial court judge stated the burden of proof thusly:
“The jurisprudence clearly states what the weight of this evidence must be and that is that the circumstantial or indirect evidence must be of such a degree that it can lead but fairly and necessarily to the conclusion that an adultery, as alleged has been committed. The cases holding this to be the rule are legion in our jurisprudence, among which are LaTour v. Fuselier, La.App., 228 So.2d 336; Daigle v. Daigle, La.App., 222 So.2d 318, writs refused, 254 La. 471, 223 So.2d 837; Savin v. Savin, 218 La. 754, 51 So.2d 41.
“In Pilgrim v. Pilgrim, 235 La. 112, 102 So.2d 864, the court stated the rule another way, and that is that the degree of proof must be so convincing as to exclude any other reasonable hypothesis other than that of guilt.” (Emphasis ours.)
We find that the trial court judge stated and applied the correct burden of proof.
Considering the second issue presented by this appeal, the evidence in the record primarily concerns itself with the surveil-lances of defendant’s residence on the evenings of March 29th, 1971, and April 7th, 1971; the days on which the alleged acts of infidelity occurred. Testimony regarding the surveillances was principally provided by the plaintiff, Laura Lee Norris, (a friend of Mrs. Falgout) and John Jaynes (a private detective hired by plaintiff).
The plaintiff and Mrs. Norris testified as follows in regard to the March 29th surveillance: they staked themselves out near defendant’s mobile home and saw defendant enter accompanied by a Mrs. Migues; defendant and Mrs. Migues were alone in the mobile home for about two hours; during this period of time, the large light in the kitchen was turned off, but there were still dim lights on in the end of the trailer where the kitchen and living room were located; about 10 :00 p. m. the large overhead light in the kitchen end of the trailer was turned on momentarily and immediately thereafter turned off, as the defendant and Mrs. Migues departed from the trailer. There is no testimony that the lights in the bedroom end of the trailer were ever turned on or turned off.
The testimony of plaintiff and Mrs. Norris is essentially the same in regard to the April 7, 1971, surveillance when John Jaynes, a private detective, joined the plaintiff and Mrs. Norris.
The private detective testified that the light in the eastern end of the trailer (where the bedroom of the defendant is located) was never turned on or off; likewise for the bathroom light. He further testified that the lights in the western end of the trailer (where the kitchen and the living room are located) were at all times on and burning fairly brightly.
The testimony of these three witnesses for the plaintiff concerning both surveil-lances is essentially identical except for the details surrounding the intensity of light *73 ing. Plaintiff and Mrs. Norris said that the lights in the mobile home were dim. To this we contrast the relatively disinterested testimony of John Jaynes, who said the lights were fairly bright the whole time the parties were there together. Suffice it to say, that lights were on continuously while defendant and Mrs. Migues were alone together in defendant’s mobile home.
Mrs. Migues and defendant testified that on the two days in question, they were alone together for short periods of time, but that at no time did any act of adultery occur.
There is some evidence in the record with reference to a five-day trip to Arkansas and Tennessee taken by Mr. and Mrs. Trahan, Mrs. Migues, and the defendant. Although such conduct may appear impro-prietous, plaintiff’s own witnesses, Mr. and Mrs. Trahan, testified that nothing illicit or immoral took place during this trip.
It is well settled that adultery can be proved by indirect and circumstantial evidence. The circumstances and facts established must be such as to lead fairly and necessarily to the conclusion that adultery has been committed as alleged in the petition. Morris v. Morris, 152 So.2d 291 (La.App. 1st Cir., 1963). However, as correctly stated by the trial court, such evidence must be so convincing as to exclude any other reasonable hypothesis but that of guilt.
The trial court judge applied the correct principles of law to the facts of the case at bar. He found that evidence submitted by plaintiff fell short of establishing the adultery of Mr. Falgout. See: Bertrand, supra; Bosch v. Bosch, 143 So.2d 284 (La.App. 4th Cir., 1962) ; Fister, supra; Kendrick v. Kendrick, 232 La. 1104, 96 So.2d 12 (1957).
In Gilbert v. Heintz, 231 La. 535, 91 So. 2d 784, 786 (1956), Justice Moise, of the Louisiana Supreme Court, said the following which is germane to the issue at hand:
“The trial judge looks at the influences which surround our fellows, and then sounds their hearts by the plummets which he applies to his own. He is not under the same handicap as this Cortrt, who reads a bare transcription of testimony. The trial judge, being a judge of original jurisdiction, tries, hears, and observes all that transpires in a courtroom, particularly those matters happening therein which are not susceptible of being taken down by the stenographer, such as the witnesses’ manners on the stand, and their course of conduct while giving their testimony. It is because of the knowledge of these facts that this Court has adopted the rule that the judgment of the district court on questions of fact should not be disturbed unless manifestly erroneous.”
The trial court judge saw and heard the witnesses. We cannot say that he committed manifest error in holding that plaintiff failed to prove the material facts alleged in her petition. City of New Orleans v. New Orleans Canal, Inc., La. App., 173 So.2d 43, writs refused, 247 La. 727, 174 So.2d 135 (1965). We thus find no error in the judgment appealed from which rejects plaintiff’s demand for a judgment of divorce.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.