386 So.2d 953 (1980)
Joyce Ann JESSEN, Plaintiff-Appellee,
v.
Emile Benny JESSEN, Defendant-Appellant.
No. 7583.
Court of Appeal of Louisiana, Third Circuit.
May 21, 1980.
*954 Hunt, Godwin, Painter & Roddy, Fred R. Godwin, Lake Charles, for defendant-appellant.
Francis A. Dressler, Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and LABORDE, JJ.
DOMENGEAUX, Judge.
Did the defendant-husband produce sufficient evidence to prove that his wife, the plaintiff, committed post-separation adultery? *955 If he did then plaintiff is not entitled to post-divorce alimony. In the judgment of divorce, however, the trial court found the evidence of adultery to be insufficient, declared the wife to be free of fault, and awarded her $550.00 per month as post-divorce alimony. The husband appeals claiming that his wife is not entitled to alimony, because she committed adultery. Alternatively, he argues that an award of $550.00 per month violates La.C.C. Art. 160 because the amount exceeds one-third of his income. He also urges that the trial court erred in denying his motion for a new trial. We affirm.[1]
The defendant, Benny Jessen, builds his case entirely on circumstantial evidence. Adultery may be proved by circumstantial evidence alone but this evidence must be so convincing that it excludes any other reasonable hypothesis but that of guilt of adultery. Helms v. Helms, 349 So.2d 441 (La. App. 3rd Cir. 1977); Dubois v. Falgout, 268 So.2d 70 (La.App. 3rd Cir. 1972).
Testimony establishes that plaintiff, Joyce Ann Jessen, and her alleged co-respondent, Douglas Jeffries, enjoyed a close and warm relationship. Plaintiff admitted that she occasionally stayed overnight at Mr. Jeffries' home in Lake Charles when only she and Mr. Jeffries were there. These instances occurred, she testified, only when she had had too much to drink and could not drive home. At other times, she and her three daughters stayed overnight at Mr. Jeffries'. In fact, following her surgery for a hysterectomy on June 12, 1978, the plaintiff and her three daughters virtually lived at the Jeffries home about half the time, until the date of the trial in January of 1979.
Plaintiff also admitted that Mr. Jeffries stayed at her mobile home overnight on at least three occasions, although she uniformly denied adultery on these or any other occasions when she was with him alone.
Defense counsel contends that these numerous overnight stays alone with Douglas Jeffries should have been sufficient circumstantial evidence of adultery and cites Helms v. Helms, supra, as authority.
Defense counsel's reliance on Helms v. Helms is misguided. There the defendant husband admitted to having spent two consecutive nights at the apartment of his alleged co-respondent. However, there was much more circumstantial evidence which supported the trial court's finding that the defendant was guilty of adultery. Four witnesses testified that they maintained constant overnight surveillance of the apartment on the dates in question, noticed only the defendant and his girlfriend enter, saw the silhouetted couple undress in the master bedroom, get into bed together, and put the lights out. In our case, there are no dates, no witnesses, and no other evidence apart from the admission of Mrs. Jessen that she and Mr. Jeffries were occasionally alone at night.
The main portion of defendant's case is structured around a four-night-five-day trip to New Orleans beginning on September 15, 1978, and ending September 19, 1978. As proof of adultery during this trip, the defendant relies on hotel records and inconsistencies in testimony between two of the plaintiff's witnessesthe plaintiff herself and Ben Norris, Mr. Jeffries stepson.
The record of the Royal Orleans Hotel reveals the registration of "M/M Douglas Jeffires" in room 605, beginning September 15, 1978, and ending September 19, 1978. An advance deposit for the room was made by check from Jeffries Finance Company. The records further show that room service was obtained on several occasions and that numerous phone calls were made from the room during those dates.
Mrs. Jessen readily admits that she accompanied Mr. Jeffries on a trip to New *956 Orleans at that time. According to her testimony, Mr. Jeffries registered her into the Royal Orleans Hotel but he never went up to the room himself. She further testified that originally, three personsherself, Mr. Jeffries, and Honor Faith "Tootsie" Burton, a close friend of Mrs. Jessenwere to make the trip to New Orleans but that Mrs. Burton cancelled at the last minute, after the advance payment to the Royal Orleans Hotel had already been made. The original plan called for Mrs. Jessen and Mrs. Burton to occupy the room together at the Royal Orleans Hotel. Further, Benjamin Norris testified that his stepfather, Mr. Jeffries, spent the nights of September 15, 16 and 17 (Friday, Saturday, and Sunday) at his apartment located in Metairie.[2]
Defense counsel's attempt to overwhelm the court with detailed hotel records does not obscure the fact that the records do not show that Mrs. Jessen and Mr. Jeffries were ever alone in the room. No witnesses were produced who could testify that the pair cohabited room 605 of the Royal Orleans on any of the nights, or days, in question.
Despite the inconsistencies in testimony, the trial court felt that the defendant simply did not discharge his heavy burden of proof and found that Mrs. Jessen was not guilty of adultery. We decline to upset this holding in the absence of more compelling evidence of adultery. This court made a similar holding in Dubois v. Falgout, supra. There, the wife produced strong evidence that her husband committed adultery. The trial court rejected that evidence, finding that it fell short of establishing the husband's adultery. In affirming that determination this court quoted from Gilbert v. Heintz, 231 La. 535, 91 So.2d 784, 786 (1956), the following:
"The trial judge looks at the influences which surround our fellows, and then sounds their hearts by the plummets which he applies to his own. He is not under the same handicap as this Court, who reads a bare transcription of testimony. The trial judge, being a judge of original jurisdiction, tries, hears, and observes all that transpires in a courtroom, particularly those matters happening therein which are not susceptible of being taken down by the stenographer, such as the witnesses' manners on the stand, and their course of conduct while giving their testimony. It is because of the knowledge of these facts that this Court has adopted the rule that the judgment of the district court on questions of fact should not be disturbed unless manifestly erroneous."
For the quoted reasons, and because the burden of proof required to establish adultery is such a heavy one, the trial court's holding in cases of adultery is seldom reversed.
We disagree with defense counsel's argument that this case is that rare exception which requires a reversal of the trial court's finding of fact in an adultery case. We cannot say with any degree of certainty that there is but one valid perception of human experience which leads inexorably to the conclusion, based on the evidence presented in this case, that an adulterous relationship occurred. Consequently, we affirm the trial court's finding that Mrs. Jessen is free of fault and is entitled to alimony.
Defendant contends that the alimony award of $550.00 per month ($6,600.00 per year) exceeds one-third of his income. Such an award would violate La.C.C. Art. 160. However, little has been offered by defendant, on appeal, to show that defendant's income was less than $1,650.00 per month or $19,800.00 per year (the lowest income of which $550.00 per month would be one-third). Defendant's tax returns for the years 1976 and 1977 demonstrate that his business interests provided him with an income greatly in excess of $19,800.00 annually. Evidence further showed that Mr. Jessen's gross income for 1978 approached $80,000.00. Even though he testified that *957 his income was very uncertain for the future and that he was unemployed at the time of trial, we believe that the record amply supports the trial judge's award of alimony and his decision in this regard will not be disturbed.
Defendant next urges that his motion for a new trial should have been granted for either of two reasons: (1) That La.C.C. Art. 160 is unconstitutional; (2) Newly discovered evidence placed Mrs. Jessen and Mr. Jeffries in room 605 of the Royal Orleans Hotel at the same time.
Defendant raised the issue of constitutionality for the first time in his motion for a new trial. He acknowledges that constitutional rights may be forfeited for failure to make a timely assertion of the right. See Johnson v. Welsh, 334 So.2d 395 (La.1976); Gauthreaux v. Gauthreaux, 377 So.2d 567 (La.App. 3rd Cir. 1979). He asserts that the U.S. Supreme Court case of Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979) which struck down an Alabama statute virtually identical to La. C.C. Article 160, excuses his dilatory pleading of the constitutionality issue. The Orr decision was decided March 5, 1979, after the decision of the trial court in this case on March 2, 1979. We do not consider this sufficient justification to reverse the trial court's denial of a new trial, particularly since our own Supreme Court case of Lovell v. Lovell, 378 So.2d 418 (La.1979), which declared Article 160 unconstitutional, also declared that all judgments awarding alimony prior to the effective date of the amendment to Article 160 of the Louisiana Civil Code (June 29, 1979) remain unaffected by the decision in Lovell.
Defendant finally contends that his motion for a new trial on the basis of newly discovered evidence should have been granted. This new evidence, according to defendant's brief, places Mrs. Jessen and Mr. Jeffries in room 605 of the Royal Orleans Hotel at the same time, which would tend to contradict Mrs. Jessen's testimony that the two were never in the room at the same time. However, the witness bearing this new information, one of Mrs. Jessen's (and Mr. Jessen's) daughters, was known to the defendant at the time of trial and could have been subpoenaed. Defendant has failed to adequately show this Court that this evidence could not have been discovered with due diligence before or during trial. Hence, the denial of a motion for a new trial was proper. La.C.C.P. Article 1972(2); Alexandria Volkswagen, Inc. v. McNeal, 254 So.2d 484 (La.App. 3rd Cir. 1971).
For the above and foregoing reasons the judgment of the District Court is affirmed. All costs are assessed against the defendant-appellant, Benny Jessen.
AFFIRMED.
NOTES
[1] Mrs. Jessen had previously obtained a legal separation from her husband. In this case, she sued for divorce based on living separate and apart for one year following a legal separation. The trial court granted the divorce on that basis and awarded her alimony. One issue raised by the appeal is that the trial court erred in ordering defendant to pay one-half of the costs of the proceedings. That issue has not been argued and is presumed waived. Thus we do not consider it here.
[2] Mr. Norris could not testify as to the whereabouts of his stepfather on Monday night because he (Mr. Norris) was in the hospital that night.